Donald N. SCHWEITZER, Appellant,

v.

STATE of Indiana, Appellee.

No. 26S00–8811–CR–910.

Supreme Court of Indiana.

April 6, 1990.

John D. Clouse, Evansville (Michael C. Keating, of counsel), for appellant.

Linley E. Pearson, Atty. Gen., Danielle Sheff, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Attempted Murder, a Class A felony, for which he received a sentence of thirty (30) years; Criminal Recklessness, a Class D felony, for which he received a sentence of two (2) years; Criminal Recklessness, a Class C felony, for which he received a sentence of eight (8) years; Criminal Recklessness, a Class D felony, for which he received a sentence of three (3) years; and Criminal Recklessness, a Class D felony, for which he received a sentence of two (2) years, all sentences to run concurrently except Count III, Criminal Recklessness, for which he received a sentence of eight (8) years, which is to run consecutively with Count I, the Attempted Murder conviction.

The facts are: At the time of the offense leading to this appeal, appellant was a 52–

year–old man with a history of mental illness. In 1979, he was divorced from Lorene Durbin, and after a period of absence, appellant returned to the Evansville area in 1987 and attempted a reconciliation with her. However, on March 25, 1988, his former wife told him that there would be no reconciliation.

Upon receiving this information, appellant drove to the home of his daughter, Donna Williams. She stated that he was extremely depressed when he left her. Later the same afternoon, he drove to the home of a son-in-law, David Eaton, where he again related his problems with his former wife and appeared to be extremely depressed.

Because appellant previously had done odd jobs for Eaton, Eaton asked him to repair some lights. However, when Eaton returned later that evening, he found that the job was only partially done, and tools were scattered throughout the premises.

At approximately 6:00 p.m. that evening, appellant called another daughter, Diane Sue Schweitzer, telling her he was leaving and just wanted to say good-by. The daughter immediately headed toward appellant's apartment. When she arrived, he was standing in the hallway with a gun. He began talking about his former wife and became very angry, telling his daughter to "get the hell out." She stated he had never used profanity toward her before.

The daughter attempted to make telephone calls. Appellant started firing his gun, one shot striking the telephone his daughter was using. While appellant was sitting at the dining room table sobbing, his daughter grabbed the gun and ran out the door to call the police. When the police arrived, appellant was gone, apparently driving his pickup truck.

Around 7:00 p.m. that evening, Roger Miller and Lawrence Benkert were travelling west on Highway 68 in Gibson County. They observed appellant standing by his truck on the side of the road. He flagged them down, and they observed that the truck had a flat tire. Miller told appellant they would drive into town and send help.

Appellant then walked back to the truck. Benkert got out of the car and walked to the back of the truck. Appellant pulled a rifle from the seat of the truck, and Benkert ran into the ditch. Appellant fired a shot at Miller, who was still in the car. Miller laid down in the seat just as a bullet went through the windshield and into the headrest on the driver's side. Miller threw the car into reverse, just missing a car driven by Cheryl Schmits.

Appellant then turned his attention to Schmits' vehicle and fired one shot. The bullet went through the car, striking Schmits in the arm. While cars were turning around in the middle of the road, Kent Schurmeier, with his wife and children, approached the scene. Appellant saw them and fired one shot into the front of their vehicle, fragments hitting their younger daughter Erin in the face.

Simultaneously Greg Hoffman was approaching the scene in his vehicle. He noticed cars turning around and saw appellant standing by his pickup truck. Assuming he needed help, Hoffman approached appellant's truck. Appellant aimed his rifle at Hoffman and fired, striking the side of his truck. In the meantime, Lawrence Benkert had flagged down Earl Coomes, a Deputy Marshall from Haubstadt.

By the time Coomes arrived on the scene, appellant had left and had last been seen headed for the residence of Bob Hirsch. When Officer Coomes arrived at that location, he found appellant under his truck, apparently attempting to fix his flat tire. When the officer approached and asked appellant to come out from under the truck, he refused. When the officer attempted to physically pull him from under the truck, appellant began screaming and fighting. Two other officers arrived to aid Coomes. In the ensuing struggle, appellant kicked Coomes in the face before he was subdued.

Appellant appeared to the officers to be intoxicated and they requested he take an intoxilyzer test. However, after several attempts to blow into the machine, he refused to proceed further. When the officers attempted to process him, he again

began struggling with them. It became necessary to place him in a straightjacket and shackles. He then was placed in a holding cell where he began biting pieces off of a wooden bench and attempting to insert the wooden splinters into the shackles in an attempt to remove them. He also banged his head against the wall.

Attorneys for appellant filed a notice of insanity defense, and the court appointed Doctors Thomas F. Liffick and David Cerling to examine appellant.

■ Appellant claims the trial court erred in refusing his Tendered Instructions numbered 1 through 8. Appellant's Tendered Instruction 1 was a detailed instruction as to what elements must be proved to establish attempted murder. However, the Court's Instruction No. 14, given to the jury, was a correct statement of the law in this regard and the giving of appellant's Tendered Instruction No. 1 would merely have been repetitious. A court is not required to give instructions that are covered by other instructions given by the court. *Carter v. State* (1987), Ind., 512 N.E.2d 158.

■ Appellant's · Tendered Instruction No. 2 informed the jury that if they found the facts of guilt or innocence equally probable, they must accept the inferences which are consistent with innocence. The trial court's Instructions 4, 5, 11, 12, and 25, when taken together, fully cover the contents of appellant's Tendered Instruction No. 2. It therefore was not error to refuse it.

■ In his brief, appellant next argues that the court erred in refusing his Instructions Nos. 7 and 8. These instructions attempted to inform the jury as to what the results would be if they returned verdicts of not guilty by reason of insanity or a verdict of guilty but mentally ill. It is generally inappropriate to instruct a jury on specific penal ramifications of verdicts. *Wilson v. State* (1989), Ind., 533 N.E.2d 114; *Smith v. State* (1987), Ind., 502 N.E.2d 485.

■ In cases such as the case at bar, where the jury plays no part in fixing the penalty but has the sole duty to determine what crimes, if any, the appellant has committed, the jury should not be confused by a reference to the sentencing consequences following a finding of guilty. *Id.* The trial court did not err in refusing to give appellant's Tendered Instructions 7 and 8.

Appellant claims the trial court erred in giving its Final Instructions 12, 16, and 27. The Court's Instruction No. 12 instructed the jury that the intent to commit a crime or the specific intent to kill can be inferred from the defendant's conduct.

The Court's Instruction No. 16 correctly defined criminal recklessness as a Class D felony. Instruction No. 16 also included the statement that if the jury found that appellant's conduct was a result of mental disease or defect to such an extent that he was unable to appreciate the wrongfulness of his conduct, he should be found not guilty by reason of insanity. It also included instruction as to the possibility of a verdict of guilty but mentally ill.

■ Appellant contends the Court's Instruction No. 12, while a correct statement of the law, is incomplete as it relates to the evaluation of inferences which may be drawn in a criminal case. It is not necessary that each instruction cover every phase of the law related thereto. Instructions are to be construed together. If, when so construed, the jury has been properly instructed, there is no reversible error. *Lopez v. State* (1988), Ind., 527 N.E.2d 1119. When the instructions in this case are considered in their entirety, it becomes evident that the court thoroughly instructed the jury as to the elements necessary to form the specific intent to kill and what the jury might consider in arriving at such a verdict.

Appellant objected to the Court's Instruction No. 16 for the reason that Cheryl Schmits was not one of the victims listed under the instruction on criminal recklessness. In its Instruction 15, the trial court had instructed the jury concerning the charge of criminal recklessness as to Schmits, instructing that criminal recklessness causing serious bodily injury is a

Class C felony. From the evidence in this case, the jury was within its province to find that through appellant's criminal recklessness Schmits had suffered serious injury.

■ Appellant argues, however, that the established fact that the bullet struck Schmits in the arm is not sufficient to show serious injury as a matter of law. However, the definition of serious bodily injury, Ind.Code § 35–41–1–25, includes injury which inflicts "extreme pain." Schmits testified that she never before had been so painfully injured. We find no reversible error in the trial court's separation in its instructions as to the injuries inflicted upon Schmits and the criminal recklessness directed toward the other parties.

The Court's Instruction No. 27 correctly stated the law concerning voluntary intoxication and its use as a defense to demonstrate that appellant was so intoxicated he was incapable of forming the intent to commit the crimes. Appellant concedes that this instruction follows *Terry v. State* (1984), Ind., 465 N.E.2d 1085; he also alleges, however, that it is incomplete because it does not inform the jury that intoxication also can negate the specific intent, such as the intent to kill required in charges one and two.

■ Appellant contends that the level of intoxication could be such as to negate one's ability to specifically intend a certain result yet it would not be so severe as to eliminate his ability to function and thus prevent a general criminal intent. Appellant also claims that he in no way attempted to invoke the defense of intoxication and therefore the instruction was not germane to the issues and would tend to confuse the jury.

However, evidence in this case shows that prior to the incident, appellant had consumed between four ounces and a water glass full of liquor. Both Miller and Benkert thought appellant was intoxicated. Deputy Marshall Coomes testified he believed that appellant was intoxicated but knew what he was doing.

There is ample evidence in this record to indicate that appellant was intoxicated at the time the crimes were committed. The trial court was well within its prerogative in instructing the jury on the proper consideration of intoxication as a defense. We cannot join appellant in his observation that the instruction omitted language necessary for them to determine specific intent to kill as charged in Counts I and II. We find no reversible error in the giving of the Court's Instruction No. 27.

■ Appellant claims the verdicts are not sustained by sufficient evidence. Appellant takes the position that his conduct, as described by eyewitnesses along with the testimony of the court-appointed doctors, presents a set of facts which demonstrate that appellant should have been found not guilty by reason of insanity. He takes the position that there is no evidence in this record to rebut the lack of ability to form criminal intent.

Doctor Liffick, who is a psychiatrist, testified that mental illness does not necessarily amount to insanity as a legal defense to a crime. He further testified that he could not form an opinion as to whether appellant was insane at the time. Doctor Cerling, a clinical psychologist, testified that in his opinion appellant was unable to appreciate the wrongfulness of his acts at the time of the incident.

The facts before the jury were that appellant was a 52–year–old man with a history of mental problems. Notwithstanding these problems, he had been able to function in society. On the day in question, he had been emphatically informed by his former wife that there would be no reconciliation. This caused him great frustration. Following consumption of alcoholic beverages, possibly as much as a water glass full of liquor, appellant armed himself and became abusive and a threat to all he encountered.

The jury was faced with deciding whether appellant's actions were beyond his control due to insanity or whether the combination of rage and intoxication brought about his random attacks on other people. When there is evidence on both sides of the

issue of insanity, this Court is not justified in invading the province of the jury in second-guessing such a determination. *Campbell v. State* (1989), Ind., 536 N.E.2d 285.

In the *Campbell* case, four out of five doctors who testified stated that in their opinion, the defendant was insane at the time he committed the offense. There we held that the trier of fact had the opportunity to hear and observe the witnesses and determine the weight of their evidence. Such is the situation in the case at bar. *See also Shepherd v. State* (1989), Ind., 547 N.E.2d 839 and *Dean v. State* (1990), Ind., 551 N.E.2d 452. Given the record in this case, we are not justified in overriding the verdict of the jury.

Appellant also contends the sentences he received are excessive and not appropriate considering the state of his mental health and the harm done by his actions. He specifically points to his enhanced sentence of eight (8) years by reason of his criminal recklessness directed toward Cheryl Schmits, who was shot in the arm, and the court's decision to order that count to be served consecutively with the sentence imposed in Count I.

In sentencing appellant, the trial court specifically found as aggravating factors the seriousness of the offense, appellant's volatile conduct, and his post-trial behavior. The court further found that the presentence report indicated that appellant was "an inherently dangerous person." As to mitigating factors, the court found that appellant had no prior criminal record, had a good work history, and expressed in court remorse for his actions. The court then found that the aggravating circumstances outweighed the mitigating circumstances. We find that the trial court complied with Ind.Code § 35-38-1-3. *Coates v. State* (1989), Ind., 534 N.E.2d 1087.

Appellant also claims his sentence is manifestly unreasonable because Miller was uninjured and Schmits may not have sustained a permanent injury. Appellant further contends that he will be elderly by the time he is eligible for release from prison. This Court will not declare a sentence manifestly unreasonable unless no reasonable person could find the sentence appropriate in light of the nature of the crime and the character of the offender. Ind.R.App.Rev.Sen. 2; *Burgans v. State* (1986), Ind., 500 N.E.2d 183. We also have held that the absence of obvious injury to the victim is not a mitigating factor. *See Scruggs v. State* (1986), Ind., 489 N.E.2d 935.

We find no reversible error in the manner in which appellant was sentenced or in the length of the sentence prescribed.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, J., concur.

DICKSON, J., dissents without separate opinion.

PIVARNIK, J., not participating.